UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE APPLICATIONS OF THE UNITED STATES OF AMERICA FOR:<br><br>A WARRANT AUTHORIZING THE DISCLOSURE OF LOCATION INFORMATION, and<br><br>AN ORDER AUTHORIZING THE INSTALLATION AND USE OF A PEN-REGISTER AND TRAP-AND-TRACE DEVICE OR PROCESS AND THE DISCLOSURE OF TELECOMMUNICATIONS RECORDS AND/OR INFORMATION | **FILED UNDER SEAL**<br><br>Misc. No.<br><br><br><br>October 2, 2018 |

## MASTER AFFIDAVIT

I, Jonah Mazzacane, being duly sworn, depose and state as follows:

### I.   TRAINING AND BACKGROUND

1.   I am employed as a Special Agent with the Drug Enforcement Administration ("DEA") and have been so employed for approximately nine years.

2.   I am currently assigned to DEA's New Haven District Office ("NHDO"). During my assignment to the DEA's NHDO, and previous assignment to the DEA New York Drug Enforcement Task Force, I have prepared numerous affidavits in support of applications for federal search warrants and arrest warrants, as well as in support of authorizations to conduct electronic surveillance. As a case agent, I have directed and coordinated electronic surveillance, controlled purchases of drugs, physical surveillance, and undercover activities as well as debriefed and managed confidential sources. I am familiar with the manner in which individuals obtain, finance, store, manufacture,

1

transport, and distribute their illegal drugs. I have a Bachelor of Science degree from Roger Williams University. I have completed the sixteen-week DEA Basic Agent Trainee academy in Quantico, Virginia. Prior to my career with the DEA I was a Police Officer in Torrington, CT for approximately 4 years. I have also attended numerous law enforcement training courses related to the field of drug law enforcement.

3. I am also an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I have prepared numerous affidavits in support of applications for federal search warrants and arrest warrants, as well as in support of authorizations to conduct electronic surveillance. As a case agent, I have directed and coordinated electronic surveillance, controlled purchases of drugs, physical surveillance, undercover activities as well as debriefed and managed confidential sources.

## II.   INTRODUCTION

4. I, along with other law enforcement personnel, am currently involved in an investigation into Henly FELIZ SANTIAGO and others—some known to me and others not yet identified. In January of 2018, law enforcement officials identified a drug trafficking organization ("DTO") based in Mexico and with ties to Torrington, Connecticut that, beginning in 2017, has been responsible for importing large quantities of cocaine from Mexico into Connecticut for distribution. The DTO has also been involved in transporting heroin from Illinois to Connecticut for distribution. The investigation identified Henly FELIZ SANTIAGO as a member of the DTO who was responsible for coordinating and overseeing the transportation of narcotics into Connecticut and the redistribution of those narcotics both inside and outside of the State.

5. Specifically, I am investigating violations of conspiracy to possess with the intent to distribute heroin and cocaine, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A)(i) and (ii) (hereafter the "Target Offenses").

6. On May 30, 2018, a federal grand jury sitting in New Haven returned an Indictment charging FELIZ SANTIAGO and others with the Target Offenses. Based on the charges contained in the Indictment, on May 30, 2018, the United States District Court for the District of Connecticut issued a warrant for the arrest of FELIZ SANTIAGO.

7. This affidavit is submitted in support of an application for an order authorizing the installation and use of pen-register devices or processes, trap-and-trace devices or processes, and the disclosure of telecommunications records, related to cellular telephone number 917-628-4792, which is a cellular telephone serviced by AT&T (hereafter the "Target Telephone," and which is further described in Attachment A).

8. The phone's listed subscriber information is: MSISDN: (917) 628-4792, IMSI: 310410020127921, MSISDN Active: 09/25/2018 – Current, Name: LOCUS COMMUNICATIONS; User Address: 1025 LENOX PARK BLVD NE BROOKHAVEN, GA 30319. The information to be obtained through the requested pen register and trap-and-trace device and the aforementioned telecommunications records and information have not been requested previously.

9. This affidavit sets forth a) sufficient information to establish that there are reasonable grounds to believe that the information likely to be obtained by the installation and use of a pen-register device or process and a trap-and-trace device or process on the Target Telephone is relevant to an ongoing investigation, as required by 18 U.S.C. Secs. 3122(b)(2) and 3123(a)(1); and, b) sufficiently specific and articulable facts to establish that there are reasonable grounds to believe that

the electronic communications records and/or information sought is relevant and material to an ongoing criminal investigation, as required by 18 U.S.C. Sec 2703(d). The information sought may also aid in the apprehension of a fugitive.

10. This affidavit is also submitted in support of an application for a warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A), authorizing task force officers and agents of the DEA to ascertain the physical location of the Target Telephone, as described in Attachment B, including but not limited to, E-911 Phase II data (or other precise location information) concerning the Target Telephone (the requested "Location Information") for a period of thirty (30) days.

11. For the reasons set out in this affidavit, there is probable cause to believe that the Target Offenses have been committed, are being committed, and will continue to be committed by FELIZ SANTIAGO. Probable cause exists to believe that the requested Location Information will constitute or lead to evidence of the Target Offenses as well as the identification of individuals who are engaged in the commission of Target Offenses. Further, there is probable cause to believe that the requested Location Information will constitute or lead to evidence regarding the location of FELIZ SANTIAGO, which will aid in his apprehension.

12. I have personally participated in this investigation and I am familiar with the facts and circumstances of the offenses described in this affidavit. The statements contained in this affidavit are based upon my personal knowledge, on information provided by Special Agents as well as other law enforcement personnel, on information developed through consensual recordings, controlled purchases of narcotics, physical surveillance, information provided by a confidential informant, analysis of telephone call detail records and telephone subscriber information, my review of

department of motor vehicle records and court records, and on my training and experience and on the training and experience of other Special Agents and other law enforcement personnel.

13. In connection with the above-described investigation, I have received information from a confidential informant ("CI"). Unless otherwise stated, any information obtained from the CI in this case has been related to your affiant by the informant himself/herself and/or by other law enforcement officers who have debriefed the informant. The information provided by the CI has proven to be accurate and reliable. Much of it, moreover, has been corroborated by other investigative measures and the DEA's own independent investigation. The CI has provided accurate and reliable information to law enforcement for several months and your affiant knows of no instance when the CI knowingly provided false information.

14. Since this Affidavit is being submitted for the limited purpose of the aforementioned authorizations, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish the foundation necessary to support the issuance of the requested warrant and orders.

### III. PROBABLE CAUSE

15. As previously noted, a warrant has been issued for FELIZ SANTIAGO's arrest, but he has not yet been located or apprehended. It is further my belief and the belief of other law enforcement officers that he may be continuing to engage in narcotics trafficking and that he is regularly communicating with (as of yet unindicted) co-conspirators.

16. On Wednesday, September 26, 2018, at approximately 6:00 pm the CI identified above travelled to Yankeira Polanco's residence on Donahue Place, Torrington, Connecticut. The CI has worked with FELIZ SANTIAGO in the past to distribute narcotics and FELIZ SANTIAGO has

5

indicted a desire to continue to work with him. Polanco is the wife of FELIZ SANTIAGO and is in contact with him. She led the CI into the residence and they spoke briefly about the CI's need to communicate with FELIZ SANTIAGO. Polanco utilized an Android cellular telephone to communicate with FELIZ SANTIAGO.

17. Polanco told FELIZ SANTIAGO that the CI needed to meet with FELIZ SANTIAGO in order to obtain new phones for the CI and FELIZ SANTIAGO to use when communicating with one another and in order to arrange narcotics transactions. The CI had previously been told by both Polanco and FELIZ SANTIAGO that Polanco had a separate phone dedicated to communication with FELIZ SANTIAGO. Polanco also has and Apple iPhone.

18. The parties then arranged to meet and on September 27, 2018, the CI travelled to a parking garage in the Bronx that had been shown to the CI by FELIZ SANTIAGO during a previous meeting. The CI met FELIZ SANTIAGO at the garage and the two travelled to a nearby Mofongo restaurant. Together they ate at the restaurant and conversed on various topics including the distribution of narcotics.

19. FELIZ SANTIAGO told the CI that he (FELIZ SANTIAGO) had recently conducted a narcotics transaction(s) with Lenin Polanco a.k.a. "Cheeho"—a relative of FELIZ SANTIAGO's girlfriend. FELIZ SANTIAGO said that this transaction did not go well and there was a problem with the money. FELIZ SANTIAGO offered the CI a large quantity of heroin at a price of $55 per gram. The exact amount of heroin was not specified. FELIZ SANTIAGO stated that the heroin was in Torrington, Connecticut

20. During this meeting, FELIZ SANTIAGO also told the CI he was worried about his finances and often thought of returning to the Dominican Republic. FELIZ SANTIAGO showed the

CI pictures of his house in the Dominican Republic and said that the CI could visit him. While at the restaurant FELIZ SANTIAGO told the CI that he was going to call a girl who assisted him in obtaining narcotics. FELIZ SANTIAGO called an unidentified female ("UF") on his cellular telephone while at the restaurant. FELIZ SANTIAGO then told the CI that the CI should bring FELIZ SANTIAGO to meet the girl. The CI and FELIZ SANTIAGO travelled over an hour to meet the UF in Manhattan. The travel time was due to a heavy amount of vehicular traffic.

21.     They met briefly with a heavy-set woman in her mid 40s who appeared (to the CI) to be Dominican. FELIZ SANTIAGO and the UF spoke to each other in Spanish. The CI does not speak Spanish and did not understand the conversation. FELIZ SANTIAGO handed the UF food that FELIZ SANTIAGO had brought from the Mofongo restaurant. The CS then returned FELIZ SANTIAGO to the Bronx. FELIZ SANTIAGO instructed the CI to travel to a particular cellular store in the area of the Mofongo restaurant. There FELIZ SANTIAGO stated the CI could purchase one SIM card to use to communicate with him.

22.     FELIZ SANTIAGO handed a small piece of paper with the cellular telephone number 917-628-4792 on it. In addition, the piece of paper had the number 20 written on it. He told the CI that this was his telephone number. It is my belief and the belief of other case agents that this telephone number is a number that FELIZ SANTIAGO uses to conduct narcotics trafficking. He likely will communicate with other co-conspirators on this number and this number may provide law enforcement officers with more information on the DTO, which they are still investigation. Having location information on FELIZ SANTIAGO's telephone may also aid authorities in apprehending FELIZ SANTIAGO.

## IV. GENERAL INFORMATION REGARDING CELLULAR TELEPHONES

23.     Based upon my training and experience, I know that AT&T ("the Company") is a company that provides cellular telephone service to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone is connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

24.     Based on my training and experience, I know that the Company can collect E-911 Phase II data and/or other location data about the location of the Target Telephone including by initiating a signal to determine the location of the Target Telephone on its network or with such other reference points as may be reasonably available. Based on my training and experience, I know that the Company can collect cell-site data about the Target Telephone.

25.     Moreover, based upon my training and experience and speaking with other law enforcement officers and agents, I know that persons who traffic in illegal narcotics often facilitate

8

their criminal activity by the use of cellular telephones. Drug traffickers often store the phone numbers of their customers, associates or their sources of illegal narcotics within the electronic memory of their phones, including in contact lists, address lists, recent call lists and electronic calendars. Drug traffickers are constantly on the move throughout the day and by keeping their cell phones on their person, they can stay in frequent communication with their drug trafficking associates so as to keep track of their associates' whereabouts if a drug transaction is planned and imminent. When expecting a supply of narcotics, traffickers will use cellular phones to stay in communication with their source of supply to facilitate the drug transaction. Likewise, when expecting to sell narcotics to a customer, traffickers will use cellular phones to stay in communication with their customers.

## V.   AUTHORIZATION REQUEST

26.   This affidavit sets forth reasonable grounds to believe the information likely to be obtained by the installation and use of a pen-register device or process and trap-and-trace device or process on the Target Telephone is relevant to the ongoing criminal investigation described above, as required by Title 18, United States Code, Section 3123(a). In addition, this affidavit sets forth specific and articulable facts showing that there are reasonable grounds to believe the electronic communications records and/or information sought concerning the Target Telephone, and the telephone numbers that are in contact with the Target Telephone, is relevant and material to the ongoing criminal investigation described above, as required by Title 18, United States Code, Section 2703(d). Among other things, the pen register information and electronic telecommunications records will assist in identifying co-conspirators by enabling agents to determine who is contacting FELIZ SANTIAGO through the Target Telephone in suspected furtherance of drug distribution

activities and who FELIZ SANTIAGO is contacting using the Target Telephone in furtherance of those activities.

27. Accordingly, it is requested that the Court authorize the installation and use of a pen-register device or process and trap-and-trace device or process on the Target Telephone pursuant to Title 18, United States Code, Section 3123(a), and the disclosure of electronic communications records and/or information concerning the Target Telephone, and the telephones assigned telephone numbers that are in contact with the Target Telephone, pursuant to Title 18, United States Code, Section 2703(d).

28. In addition, based upon the information set forth herein, there is probable cause to believe, and I do believe, that the requested Location Information will constitute or lead to evidence of the Target Offenses. There is probable cause to believe that FELIZ SANTIAGO is using the Target Telephone, that the requested Location Information will assist in locating the Target Telephone, will enable agents to meaningfully direct surveillance efforts, and will, correspondingly, assist in identify co-conspirators, and aid in the apprehension of FELIZ SANTIAGO.

29. Accordingly, pursuant to Federal Rule of Criminal Procedure 41 and Title 18, United States Code, Sections 2703(c)(1)(A) and 2711(3), it is requested that the Court issue a warrant authorizing agents of the DEA to obtain the requested Location Information for a period of thirty (30) days.

30. It is further requested that the Court direct the carriers for the Target Telephone to assist agents of the DEA by providing all information, facilities, and technical assistance needed to ascertain the requested Location Information, and further direct the carriers for the Target Telephone to initiate a signal to determine the location of the Target Telephone on the carriers' networks or with

such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the proposed warrant, and to furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the users of the Target Telephone, for a period of thirty (30) days. Reasonable expenses incurred pursuant to this activity will be processed for payment by the DEA.

31. It is further requested that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Telephone outside of daytime hours

32. It is further requested that, pursuant to Title 18, United States Code, Section 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), the Court authorize notice to be delayed for a period of 30 days after the termination of the monitoring period authorized by the warrant or any extensions thereof, because there is reasonable cause to believe that providing immediate notification would seriously jeopardize the investigation.

33. It is further requested that the warrant and this affidavit and any other related documents, as they reveal an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against flight, and better ensure the safety of agents and others, except that working copies may be served on Special Agents of the DEA federally deputized state and local law enforcement officers, other investigative and law enforcement officers, as well as other government and contract personnel acting under the supervision of such investigative or law enforcement officers, participating in the investigation described herein, and the carrier for the Target Telephone, as necessary to effectuate the Court's Order.

JONAH MAZZACANE
Special Agent
Drug Enforcement Agency

Signed and sworn to before me this **2nd** day of October 2018, in New Haven, Connecticut.

/s/ Robert M. Spector
Honorable Robert M. Spector
United States Magistrate Judge
District of Connecticut

## ATTACHMENT A

**Property to Be Searched**

1. The cellular telephone (Target Telephone) assigned call number 917-628-4792, whose wireless service provider is AT&T

2. Information about the Target Telephone that is within the possession, custody, or control of AT&T, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

**Particular Things to be Seized**

All information about the location of the Target Telephone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T the Company), the Company, is required to disclose the Location Information to the DEA. In addition, the Company must provide to the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Company services, including by initiating a signal to determine the location of the Target Telephone on the Company's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government or DEA agents.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).